My name is Paul Logan. I'm here on behalf of Ocean City Costa Rica Investment Group, LLC. I respectfully request the opportunity to reserve three minutes for rebuttal. I just thought it was just sort of a general global question. If you get a judgment and the judgment is paid, ultimately, how are you entitled to more? Your Honor, the short answer is that we're not looking for more. What we pursued was a course of execution on the judgment, which first began with the obtaining of the shares of the entity from Costa Rica. That occurred in 2012. We're well familiar with that. You don't have to walk us through that. When you say you're not looking for that, you've got money. Plus interest. Plus interest. That's correct. Okay. So you were executing on a judgment, were you not? Not exactly, Your Honor. What we asked for in count one. Excuse me for interrupting. When you say not exactly, your complaint is all about they are frustrating our efforts to collect. Your Honor, again, not exactly. Count one of the complaint was that after Ocean City obtained the shares, it attempted to obtain the information as to the value of this share. Why did it try to get that information? What was the purpose of that information? To determine what amount, what value, and whether or not that share certificate and the ownership of that entity, because there was only one share, would have satisfied your judgment. Exactly, Your Honor. Okay. No matter how you wordsmith it, everything about this share certificate is focused on execution. We are entitled to a money judgment. We've got a stipulated money judgment. It was all about getting the money you were owed on the stipulated judgment. What other basis did you have for extracting anything of value from them? Your Honor, we extracted the shares first. No, say it first. Prior to what? Prior to Judge Robinson crafting, with all respect to her and understanding, cost of CDG... Your judgment has been paid. The judgment has been paid. You've cashed it. You've accepted the money. Well, what the order of the court was to... The judgment was stipulated $275,000. There was interest, plus there was later attorney's fees. That's all been paid, right? That is correct, Your Honor, but what we asked for from the court was not the money, because, frankly, we own the shares. Well, give me the money back then. Do you want to give me the money back? Your Honor, that would be an opportunity under Rule, I believe it is 60B2, if the matter is reversed. We own the shares. We were attempting to determine what value the shares are. I don't know if you ever saw Mighty Python's Bureau of Arguments, but this is the Bureau of Arguments. You got a stipulated judgment for $275,000. That's true. $275,000, and then you got that, plus sanctions, attorney's fees, interest, and that's been cashed, as you just said. But now you want, in addition to that, a share of stock, which was given to you so you could execute on a judgment. Your Honor, respectfully, that's not what we're asking for at all. What we did was... What are you asking for? We want to turn back to the time when we commenced the action. Which action? The second action. Why was the second action commenced? Because we could not get the information as to the value of the S.A. Now, why did you want the value of the S.A.? Why was that relevant? Because if the value of the S.A. was greater than the judgment, it had to be marked satisfied for all of the companies. And it is. It's the Bureau of Arguments. How much was the judgment for? $275,000. But aren't you saying, Mr. Logan, look, I'm going to read to you your own words from your reply brief. This is page one of your reply brief. CDG's reference to an unmonetized share certificate of a previously existing land development company on a lawsuit designed to aid in collection of a judgment are all wrong as a matter of undisputed fact. Now, I'm really puzzled by that because you say it's – and you appear before us now to be saying that this lawsuit, this second one, was not designed to aid in collection. So I want you to answer, if you can, what right you had to extract anything of value from CDG except for the basis of the stipulated judgment. We had none. Okay. So everything that flows in this dispute between the two of you, the current dispute, flows from your assertion that you're entitled to the money you're owed on a stipulated judgment, right? There could be no basis for this second lawsuit except to collect on that judgment, correct? No, Your Honor. And if I could answer that, please, please. The count one was CDG, who previously owned the shares, interfered with our ability to find out what the value was. What does that have to do with anything except for the value is only relevant because you say we're owed $275 and change, and now you've got your money. Your Honor, at the time we commenced the action two, we had no money whatsoever. This is why you brought an action two. That's why you brought an action two. Action two was for two reasons. One, to determine value. The second one for conversion all goes to the very fact you hadn't gotten the collection on judgment one, and the conversion was your arguing that the thing that was conveyed to you, which was conveyed to you in order to execute on the judgment was an illegal conversion, and that's your count two, but it's all tied to the fact that you're alleging that you need to collect on your judgment. Count two was not about that conversion. It was after the shares were invaded to Ocean City in May of 2012, the ownership of the company was Ocean City's. The predecessor owner continued to operate in Costa Rica that entity for a year, which then transformed. I think we understand that you're frustrated that they frustrated your efforts to take control of the asset that you were given with the share certificate, but your entire case seems to come down to the word unconditional. You used the word unconditional repeatedly in your briefing. We had an unconditional ownership interest. That's your language, and I guess my question to you is, since that share certificate was put in your care and keeping for the sole reason of allowing you to collect on a judgment or money damages, the fact that at some point the district court, when you sue in aid of execution, says, okay, you've got your money. Isn't there an inherent condition in this transfer of ownership, inherent in the notion that you're using it to collect money you're owed and nothing more? Isn't it inherently the case that your right is not unconditional? It's not, Your Honor. So your view would be, and they use this hypothetical, and you need to respond to it. You've got a judgment for $100,000. You execute against a home for $500,000. Your position is, I own the house. I own the house. I own the whole house. I'm entitled to $500,000 worth of value on my $100,000 judgment. That's your legal position? That is the law. I respectfully suggest to the court that when an asset, yes, Your Honor, when an asset has been obtained during execution, that title has transferred to the judgment creditor. Absolutely. Let's assume you're right. What's the standard of review here? I believe it is an abuse of discretion standard. So how is it an abuse of discretion for a judge to say, you've got your money, you're not going to get a windfall? Your Honor, the— In treating this in effect as an execution on judgment in the first— I mean, there was an issue as to whether you really should have filed the second action at all. Rather, what you should have filed was either under Rule 69 or Local Rule 69.1, a motion to aid you in execution of the judgment. Your Honor, we took steps to determine the value by way of—this is a Costa Rican asset. We had an apostle sent to Costa Rica. The entity was represented by counsel. The request was, and count one was, give us the books and records so we know what this is worth. How much is—what's it called? Sol Sol Grey? Is that the name of it? Sol Sol Grey is the name of the entity, yes, Your Honor. How much is it roughly worth, would you guess? Well, it depends on which— I don't know the answer to that because, on the one hand, CDG has said it's valueless. On the other hand, they said it will be a windfall. We say why do you not know? So why do you care then if it might be—if you don't know and it might be valueless, why do you care? Because if it was valuable, and again, it goes back to what Judge Gordon was questioning, do we believe that as of the date that the asset was transferred in aid of execution, which was May 16, 2012, for one year thereafter, no tender of any money was offered? What difference does that make? You've got to mystify. What difference does that make? If you end up with the money you were entitled to, what difference does it make? Unless you really want the windfall, unless your position that you don't want to articulate is, we want to control the asset because it's clearly worth more than $275,000. We want the land. We want that asset. We want the windfall. Other than wanting the windfall, what possible explanation is there for what we're witnessing here in the courtroom, which is somebody asserting we've got the money, we have everything we're entitled to, but we want the share certificate. What else is going on, Mr. Logan? The other piece is during one year of operation since we were the owner, we do not know what was done. So what difference does it make? If we were the owner, Your Honor, if there were transactions, then there are tax liabilities that fall to the owner of the asset. If you didn't want the windfall, you would not have accepted the money. We were obliged to accept the money, Your Honor. It was ordered that we take the money. We said we didn't want it. But you would put it in escrow and say, hey, we're going to appeal this. That was the order of the court, and then it was a direction that we had to take it and had to satisfy the judgment. What assets does Sol Sobre have? We do not know. You help me. Where? It's in where? D.R.? Costa Rica. And roughly what does it do? It was formed originally to be a land development company. CDG has now represented that it no longer even exists. That is the dilemma that has now been posed to Ocean City. One side they say it exists and has value. The other side it has not. Nobody is going to dispute with you, and we'll have a chance to visit with Mr. Rastaki here in a moment about the bad behavior on their side of the aisle. But you have yet to explain either in paper or here standing before us how your client is injured in any way. I don't understand. You can say, we don't know what was happening with the land. We don't know what was happening here. How does any of that matter to you if you have acknowledged, as you must, we were entitled to one thing and one thing only, satisfaction of our judgment? Your Honor, my time is up. May I respond? I wish you would. Thank you. The answer is that if Ocean City did own the entity, Sol Sobre, and it was more valuable than the $275,000 plus interest, et cetera, then by having that transferred back, it loses that. And what Your Honor is suggesting, that's a windfall. What is that? It loses the increased value above the judgment amount. There is, in the event you wanted the windfall. If there is one thing valued, yes, Your Honor, and yes. Gotcha. Good. Thanks. Thank you. Good morning, Your Honor. Your Honor, may it please the Court, Brian Rostocki from the Reedcliffe Law Firm, on behalf of the Pelley Camarano Development Group, LLC. So, Mr. Rostocki, was a representation made that I guess, going back to 2006, that the entity in Costa Rica no longer existed? Your Honor, what happened was, in connection with the original lawsuit, the $2,000. Well, why don't we go back to my trial case. Can you answer yes or no, and then you can explain your answer? Sure. Was the representation made? The representation was made. By counsel. By counsel. That Sol Sobre S.A. does not exist. And we made that representation. And that was made as of 2006. It did not exist. Well, I think that's what happened when, prior to the parties ever having a dispute, there was some tax reasons. Was there such a time? That's like saying before the Big Bang. It seems like that's been going on forever. There was such a time where the parties didn't have a dispute, and Sol Sobre S.A. was transferred into Sol Sobre S.R.L. for some tax reasons. That's my understanding. In connection with the 2011 lawsuit, after my client consented to the judgment, they engaged in some collection efforts to determine, you know, to collect on the Sol Sobre S.A. stock certificate. We actually told Ocean City and the district court, you're collecting on this company doesn't exist. They still have the certificate. Yeah. Why this death match over something that's worthless, right? To just say, great, suckers, you got it, and walk away. No, no, no. You didn't. By all accounts, all accounts, there was delay and obfuscation for more than a year when you finally came up with cash. You got the money to pay off the judgment. So you wouldn't have to give me the certificate. Or you could ask for the certificate back. What happened was the judgment was consented to. My client, they turned over the Sol Sobre S.A. certificate, which was always in Mr. Logan's possession. The piece of paper, I'm sure, wasn't really as much of an interest to them as control of the entity, which they kept trying to assert and which your clients kept blocking them in. I mean, that's a fact, isn't it? Well, I don't think my client's under any obligation. I mean, we did tell them to go after the Sol Sobre S.L. certificate. They didn't. They could have engaged in post-judgment discovery to get that certificate. That's the company. Sol Sobre S.L. is the company that owns it. Yeah, that's what you're saying, and I guess their assertion to us, and I don't see anything in the record that really disputes it is, is they would attempt to get information from your clients. Your clients were not giving them information associated with Sol Sobre S.A., except for saying, you've got the wrong company. It's not worth anything. I mean, you've got a real logical conundrum here, Mr. Verstock, and you're not answering it any better than Mr. Logan answered the question about windfall until at the very end when he acknowledged, yeah, they want the windfall. That is, if this thing was really worth nothing, your client was well-served to say, okay, you've got it, and walk away. Instead, there was this fight repeatedly going on for a year until you came up with money. Can you give us any credible explanation for that, except you were delaying the execution if they could come up with cash so they couldn't have the advantage of owning the property? I don't have anything to add, Your Honor, other than they had my clients were operating under Sol Sobre S.L. This came to a head, my understanding, and this is kind of outside the record, is they were going down to Costa Rica saying they own this property, but they really didn't. So my client was engaging in normal operations under Sol Sobre S.L. because they did not have that. I understand, Your Honor. Well, you got sanctioned, right? That's what your client got sanctioned for, presumably, for bad litigation behavior, right? I mean, the way Judge Robinson phrased it was for that intervening period of time, she rewarded them for their collection efforts. Which were frustrated, right? Frustrated. That's why there was a sanction, because there was bad behavior by your client, right? There was bad behavior on behalf of my client after the judgment was entered in the 2011 lawsuit up until the 2013 lawsuit was filed. You know, so this suit makes me long for the good old-fashioned days of dueling. Give you guys pistols, crack a dog, go out there, 20 cases, and settle it that way. This is really, it's incredible. Yeah, but that's how we lost Alexander Hamilton. Oh, he's normal. He'll come and survive. That's what's so direct, it's clear. After the judgment was consented to in 2011, I was not involved until after the new lawsuit was filed. You didn't get a second to stand in for you. Yeah. Can I ask you about something you say in your answering? You say, quote, CDG timely sought relief from the district court's prior order under Rule 60, promptly after the money judgment award of attorney's fees and costs was satisfied. You don't give any record cite for that. Where in the record would we find a Rule 60 motion by your client? Yeah, it wasn't for, and that was one thing in preparing for this argument, Your Honor. There wasn't a technical motion. There was a Rule 60 request in one of the letters. Yeah, exactly, and we cite it below, and we said, we respectfully move for relief under the prior order from the 2011 lawsuit transferring the Sulzberg SA certificate. So there wasn't a motion, and there wasn't an invocation of Rule 60 either, was there? No, there was a reference to Rule 60. The reference, but the question is, was there an invocation of Rule 60? You're saying there was a letter, and then you kind of in a parenthetical put, well, there was a reference, therefore there was an invocation. To answer the question, I don't believe there was ever a Rule 60 motion made. There was a letter sent in which Rule 60 was mentioned. Correct. I mean, there was. We cite Rule 60B that we respectfully move for the court to alter or basically get rid of that order transferring the share certificate because the judgment was satisfied under Rule 65. There was no formal motion filed. It was just a request in that letter. I still think, Your Honor, I mean, this case all I think pretty much boils down to I think mootness at this point. I mean, in the district court, Judge Robinson asked Mr. Logan, your client wants to review the books and records of this asset referring to the Sulzberg SA to determine its value in order to determine whether its value will satisfy the judgment. Mr. Logan responded, that's exactly correct, Your Honor. You look at the actual complaint, there's two counts. There's the injunctive relief count seeking to have my client not engage in certain conduct with respect to Sulzberg SA and then turn over some assets and property with respect to Sulzberg SA. I think the only reason why they have that asset of Sulzberg SA, the stock certificate, is because of the underlying judgment. It's been satisfied. They don't get a double recovery. That's one of the reasons, Judge Gertle, why I put that hypothetical in there because that's what was being represented to me is they get the full amount of the property regardless of the judgment it's capped at. Well, here's the thing. To give your opponents their due here, I don't want to speak for Mr. Logan, but I take his argument to be it's true we were entitled to $100,000. I'm just using that as a number. We were entitled to $100,000 worth of value. They didn't have $100,000 cash. They had an asset. We were given the asset in aid of judgment. If it hadn't amounted to less than $100,000 or less than that, well, we'd have some maybe additional remedies. But we were entitled to own that thing, and if it wasn't a valuable asset that was worth less or just $100,000, we would be entitled to keep it, and we would be entitled to whatever increased value over time would occur because of it. That's what we were entitled to. We were entitled to $100,000 when we got it. It was perhaps worth less. It was perhaps worth the same, but we were entitled to it and any value that would increase because of that. We were prevented from enjoying the value of that which we owned because of the bad behavior of these people, and the district court dispossessed us of it without due process of law. That's what I understand the argument to be, and I guess since it's clear on the record and you can't dispute the fact that your client was sanctioned for egregious litigation misconduct, what's wrong with the argument that we should be entitled to have possession of that property and at least have the value or the worth of whatever increase of value there might have been for the year that was held, and we didn't have the benefit of it? I think, Your Honor, it just boils down to, I think, a fundamental principle. You're only entitled to the value of your monetary judgment, and they have since been paid that full judgment with interest with the full amount of their fees. What if the court instead of ordering money for a sanction said that because the interference during the year plus with regard to the execution of the judgment was so significant that she's going to allow them to keep the stock certificate and control of Sol Sobre or its successor, if indeed its assets have been transferred to a successor? And you're referring, Judge Amber, to the conversion count, I guess? Correct. I mean, so I think even if there were an act or acts of conversion, I still think any damages would be halved at the actual amount of the judgment with any accruing interest. Well, Your Honor, this is something in addition. You stipulated to a judgment $275,000. Well, that's been paid, but also you interfered with the execution of that judgment for a significant length of time. There was the transfer, possibly, of the asset held by Sol Sobre to another entity, and that, in effect, could be deemed to be a fraudulent conveyance. And you allow them to keep the certificate as a remedy for those actions. I think that would be giving them a windfall, which they're otherwise not. No, no, it's not a windfall. It's a remedy for another claim, cause of action. Well, I would say under their complaint, they did get the remedy in the form of the sanctions. They got the remedy of the $275,000, but the answer is they're not getting the same set of whatever the amount was, $275,000, whatever it was, of additional fees for chasing you around. The court said something more has to be done in order to deter this type of behavior. Well, I think that would be, at the point, would be an abuse of discretion called by the trial court, and I think Judge Robinson exercised her discretion in basically sanctioning my client with monetary sanctioning. And I don't see any other abuse of discretion on the trial court part in that regard. Okay. You know, turning to looking at this in the context of a mootness question, Your Honors, I think, you know, if you look at the two claims, I think they're moot by the satisfaction of the judgment. And also the only other item in the claim is their request for attorney's fees, which were paid in full. They submitted those fees. My client promptly paid them. So unless Your Honors have any additional questions, I have nothing else to add. Nothing. Thank you. I'd like to address Your Honors' commentary of what my better argument would have been. Just the question, Mr. Logan. The irony here is that if the judgment had been satisfied and this action was commenced, absent the judgment being satisfied, none of what we have in front of you now would have been here. It would have been a different matter. To say it again, it's a second action. Had the judgment been satisfied and this action was commenced, but this action is only there because it wasn't satisfied,  You are respectfully, Your Honor. The count one was we want from the predecessor owner of Sol Sobre all of the books and records so we can then take it over. But again, why do you want the books and records? Because we own Sol Sobre. How did you come to own it? Because of the first action. By order of court in 2012 to satisfy the judgment.  The judgment coming from the first action. The $275,000, excuse me, Your Honor. I interrupted again. $275,000 judgment was stipulated. Later... Okay, that's because what I'm trying to get at is it's all arising out of the first action. Isn't that right? We obtained the shares because of the first action. Yes. Okay. If we had then acknowledged that the Sol Sobre was worth more than $275,000, we would have satisfied it. You would have been obligated to sell property, take the money, and turn over any excess to your opponent, correct? No, I do not believe that is correct. Is that what you agreed to? That is not what we agreed to. Didn't you tell the court at one point that if the property was sold or something, and there was excess beyond the $275,000 plus interest, that you would give that money back? No. Are you sure about that? Yes, Your Honor. You are sure about that? It's like you said, I don't recall that ever being said, ever being played. We've always claimed ownership and said that we are entitled to that ownership and we can continue on. Regardless of its value? Regardless of its value because we took the asset in 2012. If it went up in value, that's to our benefit. But again, you took the asset in aid of judgment. That was the reason it got the asset. Yes, Your Honor, that was in 2012. In 2013, having been frustrated to not be able to obtain the books and records of the entity, and finding out in a verified pleading that they were still operating the same SA that we only shared for, count two was in there for the operation during that period of time. Count one was, give us the records so we can at least survive. You're saying count two, the conversion count, was basically to make you hold for any increase in value of the asset that you got in execution of judgment. That would have been yours because you would have owned the property from the date they should have turned it over. Not only the increase in value, but also whatever harm has been done to the SA, which might have been an effect on some tax issues, even flowing through to my client. I see my time is up. Wait a minute. I want to try to get the appendix here. I'm looking at JA31. And it looks here that this is something that I think you filed, plaintiff's post-judgment motion for injunction and execution. And you're asking the court to directing the plaintiff to notify the court in the event the court determines that the monetary benefit realized from the stock ownership is sufficient to satisfy any and all obligations in connection with its debt to plaintiff, including costs such as ordering, if necessary. Okay. So I'm reading from that. What page are you on? JA31 in E. I'm reading from that that you're saying all you really want to do was to get the execution of the judgment, period. No, Your Honor. If the judgment was obligated to be satisfied if we had received $275,000 plus interest, then it would have been to satisfy the judgment. Directing you to notify the court in the event that you determined that the monetary amount realized is sufficient to satisfy the defendant's obligations. That is correct. So if Sol Gray's asset was $1 million, we would then be obligated, and we say so, to satisfy the judgment. If it's valueless, then the judgment would stay. But your thinking was we got a judgment for $275,000. We get an asset, and if the asset we get in execution of that $275,000 happens to be worth $2.75 million, we keep it all. That's your view of the law. Yes, Your Honor. That is the law of debtor-creditor relationships. Believe it or not, it is no different than any in DOT. It is no different than whenever a mortgage foreclosure occurs and a bank takes an asset because the person cannot pay. If there is a positive value, the bank doesn't sell it and then have to give the change back. It keeps the asset. This is no different than that, respectfully, Your Honor, that there is no change due. I don't mean to trivialize it. That's not how debtor-credit relationships work as I understand the law. Since a mortgage involves a debtor owning an ownership interest and you've got a share certificate in aid of execution, I think that's a poor analogy, but I'll let that ride. Thank you, Your Honor. I've outlined time unless there's other questions. You can ask about subparagraph E when we let that go. Okay, thank you. Thank you very much.